UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WALTER ESCOBAR TRUJILLO,<br><br>      Plaintiff,<br><br>  v.<br><br>FERETI SEMAIA et al.,<br><br>      Defendants. | Case No. 5:26-cv-01312-SB-DTB<br><br><br>ORDER GRANTING IN PART EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 5] |

Petitioner John Walter Escobar Trujillo, a Peruvian citizen, entered the United States in February 2024 to seek asylum from persecution as a member of the LGBTQ+ community.  He was detained upon entry and placed in removal proceedings.  On December 18, 2024, an immigration judge ordered Petitioner removed to Peru but granted withholding of removal because of his credible fear of persecution in Peru.  At that time, he was released from immigration detention on parole.  He has not sustained any criminal history since living in the United States.

On July 8, 2025, Petitioner was redetained at an Immigration and Customs Enforcement (ICE) check-in.  He has been detained at the Adelanto ICE Processing Center since then.

On March 19, 2026, Petitioner filed a habeas corpus petition.  On March 20, 2026, he filed an ex parte application for a temporary restraining order (TRO) challenging the foreseeability of his removal and detention without pre-deprivation process and seeking his immediate release from immigration custody.  In opposition to the TRO application, the government stated that it intended to remove him to the Democratic Republic of the Congo (D.R.C.) on April 15, 2026. Dkt. No. 10 at 2.  Petitioner filed a reply arguing that the "last minute" designation of the D.R.C. did not demonstrate that his removal was reasonably foreseeable and

1

challenging the designation as violating third-country-removal procedures.  Dkt. No. 11.  The Court held a hearing on April 3, 2026 and ordered the government to file a supplemental declaration concerning the procedures and timeline for Petitioner's removal to the D.R.C.  Dkt. No. 16.

## I.

To obtain preliminary relief, a plaintiff must establish:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury, (3) that the balance of hardships tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (noting that the TRO and preliminary injunction standards are substantially the same).  In the Ninth Circuit, a preliminary injunction may issue where there are "serious questions going to the merits"—a "lesser showing than likelihood of success on the merits"—and a "balance of hardships that tips sharply toward the plaintiff," provided the other elements of the *Winter* test are also met.  *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (cleaned up).  "A preliminary injunction is an extraordinary remedy never awarded as of right," but only "upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22, 24.

## II.

In response to the Court's order, the government filed a declaration stating that:  (1) Petitioner's case was referred to U.S. Citizenship and Immigration Services (USCIS) for screening for protection under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture (CAT) on April 2, 2026; (2) USCIS is working with Petitioner's counsel to schedule the screening interview; (3) USCIS will complete the screening by April 15 and remove Petitioner to the D.R.C. if he does not establish that it is "more likely than not" he will face persecution there; and (4) if Petitioner meets that standard, ICE may either (a) move to reopen proceedings before the immigration court to determine eligibility under § 1231(b)(3) and CAT or (b) designate an alternative country for removal.  Dkt. No. 17.  On April 7, the government filed a supplemental report stating that Petitioner's screening interview was scheduled for April 8.  Dkt. No. 19.

In light of the record, including the government's representations, the Court denies Petitioner's request for immediate release for the reasons described below.

1.  Petitioner has not met his burden to show that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  At the hearing, he argued that the scheduled removal date of April 15 was insufficient to show that his removal was reasonably foreseeable.  But this argument impermissibly attempts to shift the burden to the government.  *See Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003).  Even if the burden shifted, the government has rebutted any showing that removal is not reasonably foreseeable with substantial evidence, including the notification of removal to the D.R.C. and a declaration by the deportation officer describing the next steps for, and anticipated date of, removal.  Petitioner has not shown that additional evidence—such as flight confirmations or travel documents—is required.  *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (rejecting *Zadvydas* claim where there was "no evidence that [petitioner was] unremovable because the destination country will not accept him or his removal [was] barred by our own laws").

2.  Petitioner fails to show that his redetention without a pre-deprivation hearing violates due process.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Ninth Circuit has made clear that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).  Even assuming a significant liberty interest, the government has a "strong interest" in enforcing the immigration laws, particularly where Petitioner is subject to a final removal order.  *Id.* at 1208 ("Enforcement of our immigration law serves both a domestic law enforcement and foreign relations function.").  Several provisions of the Immigration and Nationality Act and its implementing regulations impose procedural safeguards for noncitizens subject to final removal orders.  *See, e.g.*, 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 241.13, 241.4.  Petitioner does not address why these provisions are insufficient to safeguard his liberty interest under the circumstances.

3.  To the extent Petitioner challenges his removal to the D.R.C. without an opportunity to raise a fear-based claim, the government represented at the hearing that it does not oppose an order requiring compliance with withholding-of-removal and CAT procedures.  *See Galvez v. Jaddou*, 52 F.4th 821, 834 (9th Cir. 2022) (noting that an "injunction must be tailored to remedy the specific harm alleged"). The Court therefore grants the TRO application to the extent that it is unopposed (as stated in the next section).

III.

At the hearing, the government agreed that the language below addressed the legal requirements for third country removal and stated that it did not oppose an order requiring it to satisfy those requirements.  The Court therefore orders the government not to remove Petitioner to the D.R.C. or another third country unless it complies with the following procedures:

1.  Before removal occurs, Petitioner will be given a meaningful opportunity to raise any fear-based claim for protection.  *See* 8 U.S.C. § 1231(b)(2); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

2.  If Petitioner expresses a fear of removal to the designated country, Respondents shall refer him for appropriate protection screening and proceedings in accordance with 8 U.S.C. § 1231(b)(3) and the applicable regulations governing withholding of removal and protection under the Convention Against Torture.  *See* 8 C.F.R. § 208.31.  Respondents shall afford Petitioner a meaningful opportunity to present such claims and shall not remove Petitioner to that country unless and until those procedures are completed and a final determination has been made that removal is lawful.  *See id.*

The TRO application is otherwise denied.  The Court continues the April 10 hearing to April 24, 2026 at 8:30 a.m.  The government shall file a report on the status of Petitioner's removal by April 17, 2026.

Date: April 8, 2026

_____
            Stanley Blumenfeld, Jr.
            United States District Judge

4